**C.O. LAW, APC**
Clark Ovruchesky, Esq. (SBN: 301844)
co@colawcalifornia.com
845 15th St., Suite 103
San Diego, California 92101
Telephone: (619) 356-8960

**OLYMPUS LAW CORPORATION**
George C. Panagiotou, Esq. (SBN: 263172)
845 15th St., Suite 103
San Diego, California 92101
Telephone: (858) 300-0033
Facsimile: (858) 408-2939

Attorneys for Plaintiff,
**ERNESTO CORONA-RAMIREZ**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**ERNESTO CORONA-RAMIREZ**

**Plaintiff,**

**v.**

**EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, and EQUIFAX INFORMATION SERVICES LLC,**

**Defendants.**

**Case No.:**

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**

**1.) THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, ET SEQ.; AND**

**2.) CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE §§ 1785.1, ET SEQ.**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. Plaintiff ERNESTO CORONA-RAMIREZ ("Mr. Corona" or "Plaintiff"), through his attorneys, brings this lawsuit to challenge the actions of Defendants EXPERIAN INFORMATION SOLUTIONS, INC. ("EXPERIAN", the "Credit Bureaus", or "Defendants"), TRANS UNION LLC ("TRANS UNION", the "Credit Bureaus", or "Defendants"), and EQUIFAX INFORMATION SERVICES LLC ("EQUIFAX", the "Credit Bureaus", or "Defendants"), with regard to Defendants' reporting of erroneous negative and derogatory reports to Plaintiff's credit reports, and Defendants' failure to correct such information, which Defendants knew or should have known was erroneous and which caused Plaintiff damages.

3. Plaintiff makes these allegations on information and belief, with the exception of allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendants occurred in California.

6. Any violations by Defendants were knowing and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

7. Unless otherwise indicated, the use of any Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## JURISDICTION AND VENUE

8. Jurisdiction of this Court arises pursuant to 28 U.S.C. §1331; 15 U.S.C. § 1681p; and, 28 U.S.C. § 1367 for supplemental state law claims.

9. This action arises out of Defendants' violations of (i) the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA") and (ii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1. et seq. ("CCRAA").

10. The Court has personal jurisdiction over Defendants as Defendants conduct business within the State of California and have purposefully availed themselves of the laws and markets of the State of California and this district.

11. Venue is proper in the United States District Court, Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Orange, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

///

///

///

## Parties

12. Plaintiff is a natural person who resides in the City of Santa Ana, County of Orange, in the State of California. In addition, Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b) and 15 U.S.C. § 1681a(c).

13. Defendant EXPERIAN is a corporation whose primary corporate address is in the City of Costa Mesa, in the State of California, and is authorized to do business in the State of California.

14. Defendant TRANS UNION is a corporation whose primary corporate address is in the City of Chicago, in the State of Illinois, and is authorized to do business in the State of California.

15. Defendant EQUIFAX is a corporation whose primary corporate address is in the City of Atlanta, in the State of Georgia, and is authorized to do business in the State of California.

16. The Credit Bureaus are each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) and Cal. Civ. Code § 1785.3.

17. The causes of action herein also pertain to Plaintiff's "consumer [credit] report" as that term is defined by 15 U.S.C. § 1681a(d)(1) and Cal. Civ. Code § 1785.3(c), in that inaccurate credit information was reported by Defendants regarding specific transactions and/or experiences pertaining to Plaintiff and Plaintiff's credit worthiness, credit standing, and credit capacity. Such credit information was used or was expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

///

///

///

///

## GENERAL ALLEGATIONS

18. At all times relevant to this matter, Plaintiff was an individual residing within the State of California.

19. Furthermore, Defendants conducted business within the State of California at all times relevant.

20. On March 29, 2024, Plaintiff filed for a no-asset Chapter 7 bankruptcy in the United States Bankruptcy Court for the Central District of California. Plaintiff's case was assigned Case Number 8:24-bk-10801-TA (the "Bankruptcy").[1]

21. Plaintiff's Bankruptcy successfully discharged on July 8, 2024, and Plaintiff's Accounts and debts with the furnishers of the Accounts were included in Plaintiff's discharge.

22. However, furnishers reported or caused to be reported inaccurate information after the Bankruptcy was filed and discharged on Plaintiff's credit reports.

23. The Consumer Data Industry Association's ("CDIA") Metro 2 format is the credit industry's standardized, objective reporting format used by furnishers to provide information about consumer Accounts to consumer reporting agencies.[2]

24. Upon information and belief, Defendants have adopted the Metro 2 Format Manual as their standard instruction book in respect to credit reporting.

25. The CII status field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

26. CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

---

[1] The District Court has discretion to take judicial notice of the documents electronically filed in the bankruptcy case. *See, Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (B.A.P. 9th Cir. 2003).

[2] *See* Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at: http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

27. The lack of an accurate reporting of the CII field makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

28. The lack of an accurate reporting of the CII field also suggests that creditors are free to collect against a consumer per their pre-bankruptcy contract terms, which is inaccurate and materially misleading due to the effect of the bankruptcy orders, such as the automatic stay of section 362 of Title 11, that exist to prevent post-petition collection activity, and the discharge order which enjoins post-discharge collection upon any in personam liability for a claim.

29. Accordingly, failure to report the correct CII indicator would prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

30. Once a Chapter 7 Bankruptcy is successfully completed, furnishers for unsecured Accounts included in the bankruptcy, including the furnisher of the Accounts, are instructed to report the CII status as "Discharged/completed through BK Chapter 7", report "Current Balance", "Scheduled Monthly Payment Amount", and "Amount Past Due" as "Zero" (i.e. $0), and report "D", i.e. "no data", in the "Payment History" section.

31. Moreover, as a result of a major class action settlement in 2008, the three nationwide CRAs—i.e. EQUIFAX, EXPERIAN, and TRANS UNION—have been required to revise their procedures as to how they report debts discharged in a chapter 7 bankruptcy.[3] The settlements essentially reverse the presumption of non-dischargeability that the CRAs had been applying to chapter 7 bankruptcies. They require the CRAs to treat all prebankruptcy debts as discharged, unless furnishers provide information showing that a debt was excludable from discharge. The CRAs are to no longer report as charged off or

placed in collection debts that in fact have been discharged in bankruptcy.[3]

32. These procedures rely on the fact that furnishers are contractually obligated to report debts with codes that correspond to the major categories of non-dischargeable debt (that is, student loans, unpaid taxes, domestic support obligations, and debts subject to reaffirmation agreements). Using what is termed an "Agreed Bankruptcy Coding," the CRAs are to set to zero the stated balance owed for other debts—those that usually are dischargeable—and show them as having been discharged. This whole process is easily automated because the CRAs normally can ascertain from the information in their own credit files when a consumer's prebankruptcy debt has not in fact been discharged.

33. These revised procedures and assumptions were applied both retroactively and prospectively. With respect to current credit files, the three major CRAs were directed to retroactively "scrub" existing data to remove improper tradelines and civil judgments.

34. Despite this reform, there continue to be problems with improper reporting of discharged debts, including allegations that creditors have deliberately engaged in the practice in order to pressure debtors to pay off discharged debts, and even refusals to correct the reporting after being requested to do so by the debtor.[4]

---

[3] *White v. EQUIFAX Info. Solutions, Inc.*, Case No. CV 05-01070 (C.D. Cal. Aug. 19, 2008) (lead case number); *White v. Equifax Info. Serv.*, L.L.C., Case. No. CV 05-7821 (C.D. Cal. Aug. 19, 2008); *White v. Trans Union*, L.L.C., Case No. CV 05-1073 (Aug. 19, 2008); *Hernandez v. Equifax Info. Serv.*, L.L.C., Case. No. CV 06-3924 (C.D. Cal. Aug. 19, 2008).

[4] *See, e.g.*, *Belton v. GE Capital Consumer Lending* (*In re Belton*), 2014 WL 5819586 (Bankr. S.D.N.Y. Nov. 10, 2014). *See also* Jessica Silver Greenberg, Debts Canceled by Bankruptcy Still Mar Consumer Credit Scores, N.Y. Times, Nov. 12, 2014. *Keil v. Equifax Info. Serv.*, 2014 WL 4477610 (N.D. Cal. Sept. 10, 2014) (in response to debtor's dispute, credit union stated its policy was to report all charged-off debts as unpaid, irrespective of bankruptcy discharge); *In re Haynes*, 2014 WL

35. Indeed, the frequency of cases in which debtors had complained of the failure to properly report Accounts included in bankruptcy has led one court to observe the "sheer number of such cases may suggest that some creditors are systematically taking such action in an effort to diminish the value of a discharge in bankruptcy."[5]

36. However, despite this knowledge, the Credit Bureaus have continued to fail to adopt reasonable procedures to eliminate the reporting errors they knew or should have reasonably been aware of.

37. The FCRA imposes obligations on CRAs relating to consumers who have filed petitions for bankruptcy that require such CRAs to report the particular chapter of Title 11 under which the petition was filed and that limit the amount of time they may report bankruptcy information to a maximum of ten years. 15 U.S.C. §§ 1681c. Nothing in this statutory provision of the FCRA suggests that there is an exception to a CRAs standard obligation to employ reasonable procedures to ensure maximum possible accuracy for bankruptcy-related information.[6]

38. Accordingly, the Credit Bureaus' conduct was willful and reckless disregard of their rights and obligations under the FCRA.

---

3608891 (Bankr. S.D.N.Y. July 22, 2014) (debtor alleged that creditor refused his request to remove charge-off notation from Accounts discharged in bankruptcy).

[5] *Norman v. Applied Card Sys.* (*In re Norman*), 2006 WL 2818814 (Bankr. M.D. Ala. Sept. 29, 2006).

[6] *See also* 16 C.F.R. 600 app. § 607(3)(A)(6); *id.* § 607(3)(F)(2) ("[A] consumer reporting agency may include delinquencies on debts discharged in bankruptcy in consumer reports, but must accurately note the status of the debt (e.g., discharged, voluntarily repaid)."); *id.* § 607(3)(F)(1) ("A consumer reporting agency must employ reasonable procedures to keep its file current on past due Accounts (e.g., by requiring its creditors to notify the credit bureau when a previously past due Accounts has been paid or discharged in bankruptcy)[.]"). *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1082 (C.D. Cal. 2006).

39. As explained in more detail below, Defendants failed to reference the bankruptcy filing and discharge in the "CII" credit reporting field in Plaintiff's credit reports in respect to the Accounts successfully discharged through Plaintiff's Chapter 7 Bankruptcy.

40. Defendants also failed to report a zero balance for Plaintiff's Accounts, even though the Accounts successfully discharged in the Bankruptcy.

41. The failure to report the correct status of "Discharged in Bankruptcy" with a zero balance inaccurately and misleadingly suggested that Plaintiff still had a personal legal responsibility to pay the alleged debt, which is the opposite effect of receiving a Chapter 7 bankruptcy discharge.

42. Furnishers utilizing the Metro 2 reporting standard correctly is crucial because the Metro 2 system creates a uniform standard for the meaning given to each field provided, which fosters consistency in how furnishers formulate data to report to the credit bureaus, which ultimately leads to objective credit evaluations and scores for consumers.

43. Moreover, the FCRA and CCRAA impose no requirement or mandate that a furnisher provide any information to a consumer reporting agency. Indeed, the CDIA has repeatedly noted that the act of furnishing information to a consumer reporting agency is completely voluntary.[7]

44. Because credit reporting is a voluntary act, Defendants' deviation from the Metro 2 format instructions—the industry standard and their respective chosen method of reporting—constitutes an inaccurate or misleading statement. This is because those making credit decisions, who would expect that furnishers would adhere to the Metro 2 format, would view the reporting of Accounts included

[7] *See, e.g.,* Credit Reports: Consumers' Ability to Dispute and Change Inaccurate Information: Hearing Before the H. Comm. on Fin. Serv., 110 Congr. 50 (2007) (written statement of Stuart Pratt, President and CEO, Consumer Data Industry Association) ("not a single one of the more than 18,000 data furnishers has to provide a single record of data to our members").

in the Bankruptcy in their delinquent pre-bankruptcy form more negatively than if the Accounts reported accurately.

45. Similarly, Plaintiff alleges the Credit Bureaus each have a policy of simply parroting whatever information is provided by furnishers rather than conducting reasonable reinvestigations under the FCRA and CCRAA.

46. This is because the reinvestigations conducted by the Defendants occur in a hurried, conveyor-belt styled atmosphere in which dispute operators are under pressure to process disputes quickly to meet production quotas. This atmosphere is conducive to a speed-minded dispute operator failing to consider, or not looking for, information that is relevant to the consumer's dispute.

47. Such conduct by Defendants is willful and reckless.

48. Furthermore, the Credit Bureaus' policies and procedures for maintaining and operating their internal databases were not reasonable, because they continued reporting patently inaccurate and materially misleading information after Plaintiff formally disputed the reporting.

49. The Credit Bureaus also had knowledge of the Bankruptcy and directly received notice of the Bankruptcy's successful discharge. Specifically, pursuant to the Certificate of Notice filed in Case No. 8:24-bk-10801-TA on July 10, 2024, the Bankruptcy Noticing Center transmitted notice of the Bankruptcy discharge order to EXPERIAN by mandatory electronic bankruptcy noticing (MEBN) on July 9, 2024 at 12:48 AM EST; to EQUIFAX by email on July 9, 2024 at 1:01 AM EST; and to TRANS UNION by mandatory electronic bankruptcy noticing (MEBN) on July 9, 2024 at 12:49 AM EST. Each of the Credit Bureaus also received notice by first class mail on July 10, 2024.

///

///

///

///

50. As a direct and proximate result of the derogatory information furnished and reported by Defendants, Plaintiff has sustained actual damages including emotional distress, humiliation, embarrassment, anxiety, loss of sleep, defamation of character, pain and suffering, was impeded in seeking necessary products and services from vendors, and damages to his credit rating.

51. As a further direct and proximate result of Defendants' acts stated herein, Plaintiff has spent many hours and associated costs reviewing credit reports, disputing the incorrect information furnished by Defendants via certified mail, and incurred attorneys' fees and such further expenses in an amount to be determined at trial.

52. Moreover, Plaintiff was denied applications for credit with multiple creditors due to Defendants' inaccurate reporting.

53. Plaintiff has also refrained from attempting to obtain further credit knowing that Defendants' inaccurate reporting is appearing on his credit reports.

54. This chilling effect has precluded Plaintiff from benefiting from Plaintiff's improving credit.

55. This chilling effect has also precluded Plaintiff from improving Plaintiff's credit further by establishing new positive Accounts.

56. This inability has further exacerbated Plaintiff's frustration with Defendants since Plaintiff already made the difficult decision to file a bankruptcy in the first place.

57. Defendants' continued negative reporting has forced Plaintiff to unfairly suffer the burdens of a bankruptcy without any of the associated, and expected, benefits.

58. Namely, Plaintiff has been precluded from the fresh start that Plaintiff seeks.

59. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.

## INACCURATE AND MATERIALLY MISLEADING CREDIT INFORMATION
## RE: EAGLE COMMUNITY CU ACCOUNT NO.: 233466 **** (OPENED FEBRUARY 2018); EAGLE COMMUNITY CU ACCOUNT NO.: 233466 **** (OPENED NOVEMBER 2019); MISSION LANE TAB BANK ACCOUNT NO.: 431503425845 ****; AND TBOM/ATLS/ASPIRE ACCOUNT NO.: 550114000115 **** (collectively, the "Accounts")

60. Each of the Accounts is a debt incurred prior to the filing of Plaintiff's Bankruptcy, was properly scheduled in the Bankruptcy, and was discharged pursuant to the discharge order entered on July 8, 2024.

61. Defendants each received notice of Plaintiff's discharge on or about July 9–10, 2024 from the Bankruptcy Noticing Center.

62. Despite the discharge of the Accounts, which extinguished Plaintiff's personal liability thereon, Defendants have inaccurately reported the Accounts on Plaintiff's credit reports with a balance and/or past due amount and/or in charged off status and/or without noting that the Accounts have been discharged in bankruptcy.

63. The inaccurate reporting of the Accounts includes, but is not limited to, reporting a balance due, a past due amount, a scheduled monthly payment, and/or a status of "charged off" or similar derogatory notation, without properly updating the Accounts to reflect that it was discharged in Chapter 7 bankruptcy.

64. The balance owing and inaccurate statuses reported by the furnishers of the Accounts post-discharge inaccurately and misleadingly suggested (to potential creditors) that Plaintiff: (1) Was still legally liable to repay the alleged debts; (2) Incurred new debt during the Bankruptcy; or (3) Reaffirmed the debts notwithstanding the discharge. The furnishers' reporting deviated from Metro 2 reporting instructions in these respects.

65. However, Plaintiff did not incur new debt with the furnisher of the Accounts during the Bankruptcy proceeding or reaffirm the Accounts in the Bankruptcy. Plaintiff's debts were discharged in the Bankruptcy.

66. As of dates prior to and/or concurrent with Plaintiff's disputes in February 2026, the Accounts were reporting on Plaintiff's credit reports issued by the Credit Bureaus in a manner similar to the following:

a. EAGLE COMMUNITY CU Account No. 233466 **** (opened February 2018) reported on EXPERIAN, TRANS UNION, and EQUIFAX with a status of "Account charged off. $7,332 written off. $6,793 past due as of Jan 2026." and charge-off payment history codes, with no notation that the account was discharged in Plaintiff's Bankruptcy.

b. EAGLE COMMUNITY CU Account No. 233466 **** (opened November 2019) reported on EXPERIAN, TRANS UNION, and EQUIFAX with a status of "Account charged off. $500 written off. $500 past due as of Jan 2026." and charge-off payment history codes, with no notation that the account was discharged in Plaintiff's Bankruptcy.

c. MISSION LANE TAB BANK Account No. 431503425845 **** (opened September 2019) reported on EXPERIAN, TRANS UNION, and EQUIFAX with a status of "Account charged off. $436 written off. $436 past due as of Feb 2026." and charge-off payment history codes, with no notation that the account was discharged in Plaintiff's Bankruptcy.

d. TBOM/ATLS/ASPIRE Account No. 550114000115 **** (opened November 2019) reported on EXPERIAN, TRANS UNION, and EQUIFAX with a status of "Account charged off. $1,143 written off. $1,143 past due as of Jan 2026." and charge-off payment history codes, with no notation that the account was discharged in Plaintiff's Bankruptcy.

67. This reporting is inaccurate and materially misleading because, following the discharge, the balance on the Accounts is $0, there is no past due amount, there is no scheduled monthly payment, the Accounts is closed, and the proper status is "discharged in Chapter 7 bankruptcy" (or equivalent), with no ongoing obligation or delinquency.

68. By inaccurately reporting the Accounts with a balance owing and/or in charged off status after the discharge, without properly noting the bankruptcy discharge, Defendants misrepresented the legal status of the debt and failed to comply with industry standards for reporting discharged debts, including but not limited to the Metro 2® format guidelines requiring a Consumer Information Indicator (CII) code reflecting discharge in Chapter 7, a current balance of $0, and an appropriate payment status indicating the Accounts is closed with no balance.

69. Rather than using the bankruptcy information sent specifically to Defendants to accurately update the Accounts on Plaintiff's credit reports, which Defendants knew or should have known existed, Defendants continued reporting inaccurately on Plaintiff's credit reports. These notices from the bankruptcy court were sufficient to inform Defendants that a past due status with an outstanding balance amount would be "incomplete or inaccurate" and "materially misleading." *Huizar v. Wells Fargo Bank, N.A.*, 257 F. Supp. 3d 1103, 1109 (E.D. Cal. 2017).

70. Defendants could have simply reviewed the bankruptcy records discussed above and received by Defendants and recognized that their reporting of a balance owing with no notation of the bankruptcy discharge following the Bankruptcy was inaccurate, misleading, and outdated. Defendants should have also consulted the Metro 2 guidelines for bankruptcy Accounts delineated above to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy" with a zero balance. Instead, Defendants chose to ignore their duty to update their obsolete reporting.

71. Therefore, Defendants' inaccurate, materially misleading, and negative reporting of the Accounts in light of their knowledge of the Bankruptcy was willful.

72. Furthermore, the Credit Bureaus' policies and procedures for maintaining and operating their internal databases were not reasonable, because they allowed the reporting of patently inaccurate and materially misleading information, despite having knowledge of the Bankruptcy and directly receiving notice of the Bankruptcy's successful discharge.

73. Specifically, the Credit Bureaus could have easily ascertained that the Accounts had no further obligation owed on it by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy Accounts delineated above, and/or abiding by their obligations under the White v. EQUIFAX Info Solutions, Inc. et al. class action settlement terms discussed above.

74. Therefore, the Credit Bureaus' inaccurate and negative reporting of the Accounts in light of their knowledge of the Bankruptcy was willful.

75. Accordingly, the Credit Bureaus failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

76. Alternatively, upon information and belief, the furnishers of the Accounts properly updated the Accounts' status as "Included/Discharged through Bankruptcy" with a zero balance and zero amount past due following the Bankruptcy. However, the Credit Bureaus unilaterally and inaccurately removed that status and included a balance owing, despite the furnisher's instructions.

77. Therefore, the Credit Bureaus' inaccurate and negative reporting of the Accounts in light of their knowledge of the Bankruptcy was willful.

78. Therefore, the Credit Bureaus failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

79. On or about February 6, 2026, Plaintiff disputed the inaccurate and materially misleading reporting of the Accounts by sending written dispute letters via certified mail to EXPERIAN and EQUIFAX, pursuant to 15 U.S.C. § 1681i(a)(2), expressly notifying them that the Accounts had been discharged in his Chapter 7 Bankruptcy (Case No. 8:24-bk-10801-TA, discharged July 8, 2024), and requesting that the Accounts be updated to report a $0 balance, closed status, inclusion/discharge in bankruptcy, and deletion of any post-petition delinquencies or derogatory notations inconsistent with the discharge.

80. Plaintiff enclosed with his disputes copies of his identification and other supporting documentation.

81. Upon information and belief, on or about February 2026, Plaintiff also submitted a dispute to TRANS UNION with respect to the same Accounts, requesting the same corrections.

82. The dispute letters sent to the Credit Bureaus (the "Dispute Letters") requested the above inaccurate information be deleted pursuant to Plaintiff's Bankruptcy Discharge and corresponding Metro 2 instructions. The letter specified that the status of the Accounts should report as "discharged through bankruptcy" or the equivalent, with no balance owing and no scheduled payment due.

83. The Dispute Letters further requested that Defendants:

    a. Immediately delete the disputed derogatory information from Plaintiff's credit report and update Plaintiff's credit report accordingly.

    b. If they did not immediately correct the disputed information on Plaintiff's credit report, include the "Consumer Dispute" section as Plaintiff's dispute statement for the Accounts on Plaintiff's credit report.

84. The Credit Bureaus received Plaintiff's disputes and, upon information and belief, forwarded notice of the disputes (via ACDV, e-OSCAR, or similar system) to the furnisher of the Accounts, along with the relevant information provided by Plaintiff.

85. The Credit Bureaus each failed to conduct a reasonable reinvestigation, failed to delete or properly modify the disputed information, and/or reported the disputed items as "verified" without ensuring compliance with the bankruptcy discharge.

86. As evidenced by the investigation results and subsequent credit reports issued by the Credit Bureaus following Plaintiff's disputes, the Accounts continued to be reported in an inaccurate and/or materially misleading manner.

87. On or about March 3, 2026, Plaintiff received an updated credit report from EXPERIAN (Report No. 2335-5423-04) reflecting the results of its reinvestigation pursuant to 15 U.S.C. § 1681i(a)(6).

88. On or about March 27, 2026, Plaintiff received an updated credit report from EQUIFAX (Confirmation No. 6086567589) reflecting the results of its reinvestigation pursuant to 15 U.S.C. § 1681i(a)(6).

89. On or about March 4, 2026, Plaintiff received an updated credit report from TRANS UNION (File No. 464469817) reflecting the results of its reinvestigation pursuant to 15 U.S.C. § 1681i(a)(6).

90. The Credit Bureaus did not provide notice to Plaintiff that his disputes were "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).

///

///

///

///

///

///

91. Specifically, following the Credit Bureaus' respective reinvestigations, the Accounts remained inaccurately and materially misleadingly reported as follows:

a. EXPERIAN continued to report MISSION LANE TAB BANK Account No. 431503425845 **** with a status of "Account charged off. $436 written off. $436 past due as of Feb 2026." and charge-off payment history codes through February 2026, with no notation of discharge in Plaintiff's Bankruptcy.

b. EXPERIAN continued to report TBOM/ATLS/ASPIRE Account No. 550114000115 **** with a status of "Account charged off. $1,143 written off. $1,143 past due as of Aug 2020." and charge-off payment history codes, with no notation of discharge in Plaintiff's Bankruptcy. EXPERIAN's reinvestigation result was "Updated."

c. EQUIFAX continued to report MISSION LANE TAB BANK Account No. 431503425845 **** with a status of "Charge Off," a balance of $436, and an amount past due of $436, with no notation of discharge in Plaintiff's Bankruptcy.

d. EQUIFAX continued to report TBOM/ATLS/ASPIRE Account No. 550114000115 **** with a status of "Charge Off," a balance of $1,143, and an amount past due of $1,143, with no notation of discharge in Plaintiff's Bankruptcy.

e. TRANS UNION continued to report MISSION LANE TAB BANK Account No. 431503425845 **** with a Pay Status of "Charged Off," a balance of $436, a past due amount of $436, and a Remark of "UNPAID BALANCE CHARGED OFF," with no notation of discharge in Plaintiff's Bankruptcy. TRANS UNION's reinvestigation result stated the disputed information was "VERIFIED AND UPDATED."

f. TRANS UNION continued to report TBOM/ASPIRE Account No. 550114000115 **** with a Pay Status of "Charged Off," a balance of $1,143, a past due amount of $1,143, and a Remark of "UNPAID BALANCE CHARGED OFF," with no notation of discharge in Plaintiff's Bankruptcy. TRANS UNION's reinvestigation result stated the disputed information was "DISPUTED INFORMATION UPDATED AND OTHER INFORMATION UPDATED."

g. TRANS UNION continued to report EAGLE COMMUNITY CU Account No. 233466 **** (opened February 2018) and EAGLE COMMUNITY CU Account No. 233466 **** (opened November 2019) with a Pay Status of "Unrated" and no notation that the Accounts were discharged through Plaintiff's Bankruptcy, rather than updating the Accounts to reflect "Discharged through Bankruptcy Chapter 7" or the equivalent.

92. The evidence of EXPERIAN's willfulness is further reinforced by the fact that, in the same March 3, 2026 reinvestigation (Report No. 2335-5423-04), EXPERIAN corrected EAGLE COMMUNITY CU Account No. 233466 **** (opened February 2018) to reflect "Discharged through Bankruptcy Chapter 7/Never late" and EAGLE COMMUNITY CU Account No. 233466 **** (opened November 2019) to reflect "Discharged through Bankruptcy Chapter 7" — while simultaneously returning a result of "Updated" on MISSION LANE TAB BANK Account No. 431503425845 **** and TBOM/ATLS/ASPIRE Account No. 550114000115 ****, leaving both in charged-off status with outstanding balances and no bankruptcy discharge notation. EXPERIAN's correction of the Eagle Community CU Accounts in the same reinvestigation demonstrates that it had full access to Plaintiff's bankruptcy discharge information and possessed the technical capability to apply the correction. EXPERIAN's selective correction of those Accounts while simultaneously

leaving MISSION LANE TAB BANK and TBOM/ATLS/ASPIRE in adverse charged-off status was not the product of inadvertent error, but of willful disregard of its legal obligations.

93. The evidence of EQUIFAX's willfulness is similarly reinforced by the fact that, in the same reinvestigation reflected in EQUIFAX's March 27, 2026 credit report (Confirmation No. 6086567589), EQUIFAX corrected EAGLE COMMUNITY CU Account No. 233466 **** (opened February 2018) and EAGLE COMMUNITY CU Account No. 233466 **** (opened November 2019) to reflect "Account Included In Bankruptcy" with Bankruptcy Discharged notation codes — while simultaneously leaving MISSION LANE TAB BANK Account No. 431503425845 **** and TBOM/ATLS/ASPIRE Account No. 550114000115 **** in charged-off status with outstanding balances and no bankruptcy discharge notation. EQUIFAX's selective correction of the Eagle Community CU Accounts demonstrates that it had full access to Plaintiff's bankruptcy discharge information and possessed the technical capability to apply the correction. EQUIFAX's selective correction of those Accounts while simultaneously leaving MISSION LANE TAB BANK and TBOM/ATLS/ASPIRE in adverse charged-off status was not the product of inadvertent error, but of willful disregard of its legal obligations.

94. Upon information and belief, the Credit Bureaus' respective reinvestigations were not reasonable. More specifically, the Credit Bureaus should have discovered from their records, including Plaintiff's official dispute letter, that the information being reported was inaccurate and materially misleading. The Credit Bureaus could have easily ascertained that the Accounts had no further obligation owed on it by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy Accounts delineated above, or contacting Plaintiff for more information.

95. Even with notice of the Bankruptcy filing and discharge, the Credit Bureaus allowed the furnisher of the Accounts to report the above inaccurate information despite their obligations under the White v. EXPERIAN Info Solutions, Inc. et al. class action settlement terms discussed above.
96. Therefore, the Credit Bureaus conducted a superficial "reinvestigation" and merely doubled-down on their inaccurate reporting for the Accounts. This has continued to hurt Plaintiff's credit standing.
97. Therefore, the Credit Bureaus' inaccurate and negative reporting of the Accounts in light of their knowledge of the Bankruptcy was willful and reckless.
98. Accordingly, the Credit Bureaus failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).
99. The Credit Bureaus each also failed to conduct a reasonable reinvestigation of Plaintiff's disputes, as required by 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.
100. Plaintiff's efforts to correct Defendants' erroneous and negative reporting of the Accounts by communicating Plaintiff's dispute with Defendants were fruitless.
101. Defendants' continued inaccurate and negative reporting of the Accounts in light of their knowledge of the actual error was willful.
102. Defendants' failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of their duty to refrain from reporting inaccurate information. Accordingly, Defendants willfully and negligently failed to comply with their duty to reasonably investigate Plaintiff's dispute.
103. Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

///

///

104. By inaccurately reporting Accounts information relating to the Accounts after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under the FCRA and CCRAA as cited herein.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF THE FAIR CREDIT REPORTING ACT

## 15 U.S.C. §§ 1681 ET SEQ.

## [AGAINST ALL DEFENDANTS]

105. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

106. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA, including, but not limited to, each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

107. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

108. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

///

///

///

///

///

///

## COUNT II

## VIOLATION OF CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT

## CAL. CIV. CODE § 1785.1 ET SEQ.

## [AGAINST ALL DEFENDANTS]

109. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

110. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

111. As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(1) from Defendants.

112. As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(2) against Defendants, including punitive damages of $100-$5,000 per willful violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants:

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendants for each incident of willful noncompliance of the FCRA;
- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendants for each incident of willful noncompliance to the FCRA;
- An award for costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendants for each incident of negligent noncompliance of the FCRA;

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA;
- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendants for each incident of noncompliance of the FCRA;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against Defendants;
- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against Defendants;
- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) against Defendants;
- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b) against Defendants; and
- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

113. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: June 11, 2026

Respectfully submitted,

**C.O. LAW, APC**

By: /s/ Clark Ovruchesky
CLARK OVRUCHESKY, ESQ.
ATTORNEY FOR PLAINTIFF